IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**SHOHREH DASTANY,**

    Plaintiff,

v.

**COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,**

    Defendant.

No. 3:16-cv-00157-CL

**REPORT AND
RECOMMENDATION**

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Shohreh Dastany ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). This court

Page 1 - REPORT AND RECOMMENDATION

has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the ALJ's decision is supported by substantial evidence, this matter should be **AFFIRMED**.

## BACKGROUND

Plaintiff was born in 1954, and was 58 years old on her alleged onset date of August 30, 2012. Tr. 84, 158. She completed high school and has a semi-skilled work history as an accounting clerk. Tr. 24. Plaintiff filed her application for DIB on September 6, 2012, alleging disability due to "atrial fibrillation, posttraumatic stress disorder, depression, anxiety, insomnia, [and] tinnitus developed by taking 325 mg aspirin." Tr. 186. The Commissioner denied her application initially and upon reconsideration. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on March 3, 2015. Tr. 30-76. On April 8, 2015, the ALJ found Plaintiff not disabled. Tr. 11-29. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's denial the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920(SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R.

Page 2 - REPORT AND RECOMMENDATION

      §§ 404.1520(a)(4)(i); 416.920(a)(4)(I). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262. F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.; see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ applied the sequential process. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of August 30, 2012, and met the insured status requirements of the Social Security Act through December 31, 2016. Tr. 16. At step two, the ALJ found Plaintiff's posttraumatic stress disorder ("PTSD"), and anxiety disorder were severe impairments. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations. Tr. 17.

The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following limitations: she can understand and remember simple as well

Page 4 - REPORT AND RECOMMENDATION

as detailed and some complex instructions; has sufficient concentration, persistence, and pace to complete simple as well as detailed tasks on a consistent basis for a normal work day and work week with normal breaks; and should have only occasional interactions with the general public. Tr. 19.

In reaching his conclusion, the ALJ considered Plaintiff's testimony, but found her not fully credible. *Id.* At step four, the ALJ found Plaintiff was able to perform her past relevant work. Tr. 23. In the alternative, at step five, the ALJ found there were jobs in the national economy Plaintiff can perform, including file clerk, general office clerk, laboratory helper, and janitor. Tr. 25. Therefore, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, through April 8, 2015.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)(quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Id.* "However, a reviewing court must consider the entire record as a whole and may

Page 5 - REPORT AND RECOMMENDATION

not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007)(quoting *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.; see also Bray,* 554 F.3d at 1226.

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner,* 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to find she met the Listing for anxiety-related disorders; (2) failing to include limitations arising from mental health issues in her RFC; and (3) improperly weighing the medical evidence.

### I. The ALJ Did Not Err at Step Three

Listing 12.06 regarding anxiety-related disorders provides:

> In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>     A. Medically documented findings of at least one of the following:
>        1. Generalized persistent anxiety accompanied by three out of four

Page 6 - REPORT AND RECOMMENDATION

    of the following signs or symptoms:
      a. Motor tension; or
      b. Autonomic hyperactivity; or
      c. Apprehensive expectation; or
      d. Vigilance and scanning; or
2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week, or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

  The ALJ found Plaintiff's anxiety disorder did not meet or medically equal the criteria of Listing 12.06. Tr. 17-18.

## A. Activities of Daily Living

  The ALJ cited Plaintiff's February 2013 Adult Function Report in which Plaintiff stated she is able to manage her personal care, including dressing and feeding herself, although she requires more time to complete tasks. Tr. 18, 197. She drives short distances and does some grocery

Page 7 - REPORT AND RECOMMENDATION

shopping. Tr. 198. Plaintiff's hobbies include reading and walking, as well as yoga "for only [a] short time." Tr. 199. Plaintiff argues that treating psychologist Kenneth Paltrow, Ph.D., found she had marked difficulties in activities of daily living. This is factually inaccurate as Dr. Paltrow found Plaintiff had "moderate" restrictions in activities of daily living. Tr. 616. The ALJ reasonably concluded Plaintiff has mild limitations in activities of daily living.

## B. Social Functioning

The ALJ found Plaintiff had mild to moderate difficulties in social functioning, noting she was able to grocery shop for up to 20 minutes, depending on her emotional state, attend yoga classes a few times each week, and go to the gym to workout four to seven days a week. Tr. 18, 388, 399. The ALJ noted that in August 2013 Plaintiff was enrolled in a dance class, a music class, and a French class. Tr. 21, 553. Plaintiff points to Dr. Paltrow's notes in which Plaintiff said she feels "no connection to anyone," and has "a short fuse." Tr. 699. However, the ALJ found Plaintiff not fully credible as to the intensity, persistence, and limiting effects of her symptoms. Tr. 19. Plaintiff does not challenge this finding. The ALJ's finding regarding Plaintiff's social functioning is supported by substantial evidence.

## C. Concentration, Persistence, and Pace

The ALJ found Plaintiff had moderate limitations in concentration, persistence, and pace. Tr. 18. Plaintiff cites Dr. Paltrow's November 2012 letter in support of Plaintiff's application for a leave of absence from work in which Dr. Paltrow states "with less retention of memory [Plaintiff] has difficulty concentrating . . . ." Tr. 453. Plaintiff cites Dr. Paltrow's July 2014 completion of a form prepared by counsel in which Dr. Paltrow checks a box indicting Plaintiff is "markedly limited" in the ability to maintain attention for two hours. Tr. 615. The ALJ gave Dr. Paltrow's opinion

Page 8 - REPORT AND RECOMMENDATION

little weight, noting it was internally inconsistent and Dr. Paltrow's opinion that Plaintiff had had three or more episodes of decompensation was not supported by the record and indicated Dr. Paltrow was not familiar with the terms of art applied in social security disability adjudications. Tr. 22. The ALJ relied on the testifying medical expert, Tracy Gordy, M.D., who reviewed Plaintiff's medical records and opined that Plaintiff had mild to moderate limitations of concentration, persistence, and pace. Tr. 38. On this record, the ALJ's determination of moderate limitations in concentration, persistence and pace is supported by substantial evidence.

## D. Episodes of Decompensation

The ALJ found Plaintiff had no episodes of extended decompensation. Tr. 18. In making that determination, the ALJ relied on Dr. Gordy. Tr. 18, 38.

The regulations provide:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication, or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.
>
> The term *repeated episodes of decompensation, each of extended duration,* in these listings means three episodes within 1 year, or an average of once every four months, each lasting for at least 2 weeks. If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listing finding in a determination of equivalence.

Page 9 - REPORT AND RECOMMENDATION

20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00C, § 4 (assessment of severity).

This court has found listing equivalent of decompensation occurred when Plaintiff was involuntarily hospitalized twice in one year with bipolar disorder, and voluntarily hospitalized for treatment of a gambling addiction in the same year. *Sunwall v. Colvin,* 158 F.Supp.3d 1077, 1084 (D. OR. 2016.) Two of the hospitalizations lasted longer than a month.

Plaintiff contends her June 20, 2012 emergency room treatment for dizziness and subsequent doctor's appointments constitute an episode of decompensation. Plaintiff cites no authority for this proposition. Moreover, by July 16 she was "doing better now that cardiac testing [is] complete," and reported she was "still anxious at times." Tr. 381. On July 24, 2012, Plaintiff "denied anxiety," and was "very resistant to taking medications." Tr. 550, 548.

Plaintiff argues a second decompensation occurred in November 2012 as evidenced by Dr. Paltrow's letter regarding a leave of absence. Tr. 452-53. As the ALJ noted, Dr. Paltrow's opinion is not supported by the balance of the medical evidence. On October 30, 2012, the anxiety diagnosis was noted and she was "doing well on current regime." Tr. 531. On November 16 Plaintiff reported "feeling well" to her cardiologist, and was making lifestyle modifications including diet and exercise. Tr. 394.

Plaintiff contends a third episode of decompensation occurred in June 2013 when she woke with head pain and thought her pulse was racing, but when she checked it 15 minutes later it was normal. Tr. 557. Her cardiologist had her wear a 30 day monitor and counseled her on weight loss and diet. Tr. 558.

The ALJ correctly found Plaintiff has not suffered from listing level episodes of decompensation.

Page 10 - REPORT AND RECOMMENDATION

## II. The Medical Evidence

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue,* 495 F.3d at 632. In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of an nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n. 2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ discussed in detail the three opinions from Dr. Paltrow. Tr. 21-22. The ALJ gave Dr. Paltrow's November 2012 opinion limited weight because it was vague and did not contain an assessment of functional limitations. Tr. 21-22, 453. As discussed above, the ALJ properly rejected Dr. Paltrow's assessment of Plaintiff's social functioning and episodes of decompensation.

On March 10, 2013, Dr. Paltrow noted he had last seen Plaintiff in December 2012. Tr. 442. He wrote she was able to sit, stand, walk, carry, lift, handle objects, hear, speak, travel and perform work-related mental activities including understanding and remembering. Dr. Paltrow stated Plaintiff's "sustained concentration, persistence, social interaction, and adaptation are limited because she continues to suffer from tinnitus and the incapacitation form the posttraumatic stress disorder triggered by the onset of the atrial fibrillation." *Id.* The ALJ found Dr. Paltrow's opinion regarding tinnitus limiting Plaintiff's ability to concentrate not supported by the record as a whole, noting her condition was subjective in nature and mild. Tr. 21-22, 623, 635, 646, 671. The ALJ found Dr. Paltrow's opinion that Plaintiff was incapacitated inconsistent with her ability to perform work-related tasks. Tr. 21-22. The ALJ identified specific and legitimate reasons to give this opinion little weight.

On July 4, 2014, Dr. Paltrow completed form prepared by counsel in which he identified multiple moderate and marked limitations. Tr. 615-16. The ALJ gave this opinion little weight noting it was internally inconsistent and demonstrated a failure to understand the term "episodes of decompensation." Tr. 22. The ALJ cited the conflicting opinions of the two State agency consultants, and well as the testimony of the medical expert. Tr. 22. The ALJ gave specific and legitimate reasons to give Dr. Paltrow's opinions little weight.

## II. Plaintiff's RFC is Supported by Substantial Evidence

Plaintiff contends the ALJ erred by failing to incorporate mental health limitations into her RFC. The ALJ however, limited Plaintiff to "some complex instructions," and occasional interaction with the general public. Tr. 19. The ALJ included all of the credible limitations supported by the medical record.

Page 12 - REPORT AND RECOMMENDATION

## RECOMMENDATION

For the foregoing reasons, the Commissioner's final decision should be **AFFIRMED** and this matter should be dismissed.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See* FED. R. CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir. 1991).

DATED this 10 day of November 2016.

/s/ Mark D. Clarke
Mark D. Clarke
United States Magistrate Judge